UNITED STATES DISCTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff

vs                                Case No. 21-20650-001
                                   Hon. Laurie Michaelson

JOHN F. KENNEDY,

                                   Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE FROM ADVISORY GUIDELINE

Defendant entered a plea to conspiracy to accept bribes in an amount of roughly $15,000, resulting in an advisory range of 37-46 months, based on aggravating factors. The Court recently sentenced his co-defendant, Daniel Vickers, to a custodial term of 27 months.

The facts of the case are well known to the Court. Defendant was introduced to an FBI informant by Vickers. The informant owned a towing company, that was seeking business in the city of Detroit. Vickers also had a spotless record for many years in the Detroit Police Department. Kennedy had a 50-year friendship with Vickers.

Kennedy received a used car, some free repairs, and some money from the informant. That action by Kennedy is the definition of aberrational conduct, given his spotless and stellar record for an entirety with the Detroit

1

Police Department. It can be partially explained by life stressors at that time; partially by a profound lapse in judgment, and the frailty of the human condition, as discussed in detail below.

As Dr. Atarra Abramsky has written:

> At the time of his arrest, Mr. Kennedy was experiencing significant stressors. In 2018, his daughter was graduating from high school. His brother was also sick and he reports that around this time he was trying to save his childhood home, not realizing that there was money owed on it, so that his brother would have somewhere to live. His stepdaughter, who he is close to, was pregnant with two children when her husband left her. She also had lupus. It was during that time that her car broke down. He stated that he originally wanted to get a car for his daughter but later realized that the priority was to get one for his stepdaughter as she had children and had no transportation. Also during this time Mr. Kennedy reports that his son had a manic episode as he was diagnosed bipolar. He had crashed his car, which he had stopped paying the insurance on. He was also missing and had been running from the police related to an incident. Mr. Kennedy was trying to get his son's car fixed as well. It was during this time that he got involved with the owner of the tow truck company, who later turned out to be a confidential informant.
>
> Overall, Mr. Kennedy looks back and realizes that he was very overwhelmed during this time period. He was trying to help everybody in his family, feeling a sense of responsibility and obligation. He was worried about his children, his stepchildren, and his grandchildren. He now accepts responsibility for his actions. (Abramsky Report, p. 6).

A reading of the attached support letters makes clear that John Kennedy has always been a man who assumed responsibility for others in his life,

2

whether personally or professionally. (Exhibit A, support letters). A consistent theme is his loyalty and ingrained sense of duty to others; a strong DNA that makes his late in career conduct all the more baffling. Is it explained more fully by a serious lapse of judgment, compounded by the above life stressors? A panicked and concerned father and grandfather watching his family seemingly implode? Counsel certainly believes so.

Prior to 2018, John Kennedy had a spotless record in all areas of his life. He was a decorated, respected, and accomplished police officer. He was a loyal, loving, and supportive husband, father, and grandfather. He had gained the trust of all ranks of the police department, from the Chief at the top, all the way down to the patrol officers on the street. A perusal of the support letters shows a testament to a well-respected and trusted member of the law enforcement community. This matter in no way erases his years of duty and accomplishments for the department and the community.

John Kennedy became a police officer in 1993. He graduated at the top of his class, then began in the Tactical Services Unit. After one year, he was entrusted with the protection of the Chief of Police and his family, who were receiving threats. He was entrusted with the protection detail from 1994-1996.

From 1996-2002 he was with the vice enforcement detail. He was promoted to Sergeant. His team was part of the group that prosecuted the first-ever prostitution ring to be prosecuted in Michigan. He was part of the team that reunited girls that had been taken to Myrtle Beach to prostitute in what is now considered a sex trafficking ring.

In 2002, Mr. Kennedy left that unit and became the patrol Sergeant. He then went to the internal investigation unit where he served from 2003-2009. The Chief requested that Kennedy go the Integrity Unit in 2016, where he would be promoted to Lieutenant.

Kennedy's fellow colleagues also placed a great deal of trust in him over the years. They elected John to the Executive Board of the Lieutenant's and Sergeant's Association for over 7 years. He was overwhelmingly elected to represent the nearly 600 members of the Association. He had a reputation of ensuring the Association followed all rules to a "t", and all monies were constantly accounted for and used for only intended and proper purposes.

There is little question here as to the deep level of remorse, contrition, and humiliation Mr. Kennedy feels. That is a common thread in the attached letters and Dr. Abramsky's report. His acute feelings of self-betrayal, harm inflicted on family and self-punishment are genuine.

4

This is also a situational offense which cannot be repeated. It is respectfully submitted that there is absolutely no likelihood of any other type of criminal conduct in the future.

The abundant letters in support collectively paint a picture of a good man, an unselfish, thoughtful person always ready and willing to assist anyone in need. John Kennedy has always maintained a love of serving others, and a passionate desire to help others. Beyond that there is a devotion and love of family. His stepdaughter is more of a biological daughter. Her letter is heartfelt and illuminating.

Stepdaughter Twyanetta Sims writes that, "Although he is not my biological father he has treated my siblings and me no less than his own since he has known us, since the early 2000's. I have alot of tough days dealing with this. As I've battled with lupus and going through a marital separation for the last four years, he has been a phenomenal grandparent to my children. He's put the Grand in Grandparent for kids that are not even biologically family but that's just his heart and character. He has helped us in many ways these past years and I am devastated because I am watching this selfless, caring and loving person be punished and treated like a violent criminal and his life completely torn apart…He gave [the car] to me because my spouse had abandoned me and my children. He opened his home to help

5

create a stable environment for myself and my kids during my illness (Lupus) and marital woes. He gets my children ready for school and takes them every day to ensure than can have an amazing elementary experience because I am physically unable to and this has taken a toll on my entire family mentally, emotionally, and financially." (Exhibit A, Sims letter).

Ms. Sims's letter is candid and descriptive. And again, it emphasizes both the essential, irreplaceable role of her stepfather as the caretaker but also his continued shame and self-punishment. It also, appropriately so, points out that incarceration will cause harm to her and her children.

John Kennedy is the primary caretaker of his family. Tragically, his wife, and mother of his stepdaughter, has emotionally imploded, and is a detrimental force in the household, particularly to the young children John is so determined to care for and protect.

Though USSG section 5H1.6 indicates that family ties and responsibilities are not ordinarily relevant for departures, they certainly can be for purposes of a variance. The Second Circuit addressed this is *U.S v Johnson,* 964 F. 2d 124 (2nd Cir. 1992), on a government appeal following a thirteen-level downward departure. The district judge was affirmed—The Court took note of what it called a "soft" policy statement rather than an unequivocal absolute rule. The defendant Johnson faced more than the

6

responsibility of an ordinary parent or single parent. Both the district judge and the Circuit panel made it clear the departure was on behalf of the the family: "…we are reluctant to wreak extraordinary destruction on dependents…" *Johnson, supra* at 130.

Here, Defendant is suggesting that Mr. Kennedy's essential role as stepdaughter's physical disability, coalesce to support a variance. In *U.S. v Wadena,* 470 F.3d 735 (8th Cir. 2006) the government appealed a variance and probation term as unreasonable where the guideline range was 18-24 months. In sum, there is no blanket rule that such variances are impermissible or unreasonable. The district judge in *Wadena* appropriately considered the defendant's age, medical needs and unique necessity as a caregiver for his son.

Unlike in *Wadena,* who had a prior conviction for a similar type of crime, the government here can make no argument about re-offending and any compelling need to protect the public.

This Court is well familiar with the statutory obligation under 18 USC 3553. It is a mandate to impose a sentence sufficient <u>but</u> not greater than necessary.

The Supreme Court emphasizes that each individual sentence hearing is "a unique study in human feelings that sometimes mitigate, sometimes

7

magnify the crime and punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 S. Ct. 2035 (1996). As observed by Judge Martin in a concurring opinion, a sentence hearing should be an "intensely human exercise." *U.S. v Wilson,* 614 F.3d 219, 227 (6th Cir. 2010). Perhaps there should be an additional and explicit factor contained in 18 U.S.C. 3553: Empathy; in particular for the human condition.

"The repercussions have been staggering. Mr. Kennedy's career is over. His reputation is tainted. His marriage is in shambles and his wife is teetering on psychosis. Mr. Kennedy is left to deal with the knowledge that he has caused this. It is a sad irony that a man that was trying so hard to do things to help his family has put his family in such a precarious situation." Report of Dr. Abamsky, p. 9.

Rather than any further extended effort herein, counsel also relies upon the letters of support and Dr. Abramsky's report.

The undersigned respectfully submits that a substantial variance is appropriate. Extended incarceration will only act to gratuitously cause further destructive harm to the family, with no benefit to the community or furtherance of our criminal justice system.

8


        Respectfully submitted:

        **s/Sanford Plotkin**
        Sanford Plotkin (P38691)
        Attorney for Defendant Kennedy
        30445 Northwestern Hwy, Suite 225
        Farmington Hills, MI 48334
        248-798-5756
        sanfordplotkin@gmail.com

April 11, 2023