**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**(Southern Division)**

**UNITED STATES OF AMERICA,**

      **Plaintiff-Respondent,**

**v.**                                 **Case Nos.: 21-20650-(1) & (2)**

**JOHN F. KENNEDY,**
**DANIEL S, VICKERS,**

      **Defendants-Movants.**

**_____/**

## MOTION FOR RECONSIDERATION

**NOW COMES,** Movants John F. Kennedy ("Kennedy") and Daniel S. Vickers ("Vickers"), acting pro-se, and pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, moves this Honorable Court to reconsider the Order and Judgment denying their 2255 Motions entered on June 5, 2025.   In support, the following is respectfully submitted:

## INTRODUCTION

In its June 5, 2025 Opinion  and Order denying Kennedy and Vickers 2255  Motions the Court framed this case as follows:

John Kennedy and Daniel Vickers, former members of the Detroit Police Department, pled guilty to conspiracy to accept bribes in violation of 18 U.S.C. § 666(a)(1)(B). They have served their prison sentences and are currently on supervised release. Recently, the United States Supreme Court ruled that § 666(a)(1)(B) criminalizes only bribes and not gratuities. Snyder v. United States, 603 U.S. 1 (2024). Kennedy and Vickers believe this ruling renders them "factually innocent" such that their convictions and sentences should be vacated on collateral review. The Court disagrees. Thus, the Defendants' motions to vacate are DENIED. **see (ECF No. 79 @ Pg. ID 464).**

The Court went on to articulate the factual and legal basis for denying Kennedy and Vickers' 2255 motions.  For the reasons below, Kennedy and Vickers respectfully submit that reconsideration of the Court's Opinion and Order denying their 2255 motions is warranted.

**ARGUMENTS**

**A.  Timeliness of Motion For Rehearing :**

A motion to alter or amend under Rule 59(e) is generally construed as a motion for reconsideration.   **see Howard v. United States, 533 F. 3d 472, 475 (CA 6, 2008) )("Rule 59(e) allows for reconsideration").**   Such motions must be brought within 28 days of the judgment. **see Rule 59(e).**   This Court's denial of the 2255 motions was entered on June 5,  2025.  **(ECF No. 79).**     The entry date of judgment is not counted, so the 28 day period began on June 6, 2025. **see Fed.R.Civ.P, Rule 6(1)(A) ("Exclude the day of the event that triggered the period.").**   The 28 day period ended last Friday, July 4th, followed by the weekend on July 5th and 6th; because holidays and weekends are not counted as last days, July 7, 2025 is the actual final day to file the instant Motion for Reconsideration.  **Rule 6(1)(C) ("include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").**   Under e-filing Rule 16(a) "[a] paper filed electronically is deemed filed on the date and time stated on the NEF.    Accordingly, the instant Motion for Reconsideration is timely filed.

**B. Standard of Review:**

"Motion[s] under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence."    **Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 371 (CA6, 1998).**   "The district court must grant a motion for reconsideration if the movant demonstrates that the district court and the parties have been misled by a palpable defect, and correcting the defect will result in a different disposition of the case."  **Hansmann v Fidelity Invs. Inst'l Servs. Co., 326 F3d 760, 767 (CA 6, 2003).**   Reconsideration may

be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent a manifest injustice." **Id.**

## C. Liberal Construction Of Pro-se Motions:

As a threshold matter, Kennedy and Vickers submit that the Court failed to liberally construe their 2255 motions. **see Erickson v. Pardus, 551 U.S. 89, 94; 127 S.Ct. 2197; 167 L.Ed2d 1081(2007).** This involves assessing the motion "to raise the strongest claims … suggest[ed]" therein. **Nielsen v. Rabin 746 F3d 58, 63 (CA 2, 2014).** Such applies with particular force when a [litigants'] rights are at issue. **Bell v. Jendell, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013).** This mandate does not require the "[d]istrict judges … to act as counsel or paralegal to pro-se litigants." **Pillager v. Ford, 542 U.S. 2125, 2131; 124 S.Ct. 2241' 159 L.Ed.2d 338 (2004).** However, his less stringent standard affords pro-se litigants an opportunity to have their pleading decided on the merits. **Nielsen, supra.** As discussed below, a fair reading of Kennedy and Vickers' 2255 motions will result in a different disposition.

## D. Palpable Defects Misled The Court And Parties:

In assessing the issue of the timeliness of filing the 2255 motions the Court held:

"Defendants rely on § 2255(f)(4), contending that the facts to support their actual innocence claim could not have been discovered until after Snyder was decided on June 26, 2024. And since they filed their motions within a year of this date, they believe the motions are timely. (ECF No. 67, PageID.422; ECF No. 72, PageID.441; ECF No. 78, PageID.460.). **(ECF No. 79 @ Pg. ID 469).**

The Court concluded:

This argument is mistaken. **No new facts came to light after the Snyder decision, nor are the Defendants relying on any new facts**. Instead, their position is that, after Snyder, the pre-existing facts show only the receipt of

3

gratuities and not bribes. But "§ 2255(f)(4) is directed at the discovery of new facts, not newly-discovered law." Phillips v. United States, 734 F.3d 573, 580 (6th Cir. 2013). As in Phillips, "the heart" of Defendants' argument is really that "an equitable exception should be applied to 'bypass the statutory bar erected by the AEDPA,' because an intervening change in the law has rendered [them] actually innocent." Id.1 No such exception is warranted here.

**(i). Discussion:**

The Court's reliance on **Phillips** is misplaced because Defendants actually have **new** and **credible evidence** that when considered together with the **"static facts"** of the extant record limited to the Factual Basis of the Guilty Plea can demonstrate a colorable claim of factual innocence.    As the Court noted above, **Phillips held** there is "an equitable exception … to 'bypass the statutory bar erected by the AEDPA,' because an intervening change in the law has rendered [them] actually innocent." **Phillips, supra. @ 580.**   The "bypass" contemplated in **Phillips** is the doctrine of Equitable Tolling.   **Id. (citing Bousley v. United States, 528 U.S. 614, 622 (1998); see also Souter v. Jones, 395 F.3d 577, 590, n. 5 (CA 6, 2005) (finding a credible  claim  of actual innocence based upon  newly  discovered  evidence sufficient to equitably toll  the one year statute limitation ).**   The  Court noted that "[t]he Defendants more clearly raised an equitable tolling argument in their reply brief." **(ECF  No.  79 @ Pg. ID 470, n. 1).**    However,  the Court concluded that "the parties dispute only the application of the governing law to the undisputed factual record. So there is no need for a hearing. Nor is there a basis to grant the Defendants' requested relief [because] [h]eir motions are procedurally deficient for significantly overlapping reasons …" **Id. @ Pg ID 469.**

**(ii).  New Facts:**

The lack of the newly discovered facts misled the Defendants and Court to rely on the Factual Basis of their Guilty Pleas, some of the Indictment, a part of the Presentence

4

Investigation ("PSI"). The Court reasoned that as held  in **Snyder** distinguishing a bribe from a gratuity based on "if an official earlier agrees to the future reward and accepts payment after completion of the act …, can still be considered a bribe."   **(ECF No. 79 @ Pg. ID 471) (quoting Snyder, 144 S.Crt. @ 1947, 1959 (2024)).**

Vickers and Kennedy were preparing to file Motions for Discovery and to Expand the Record pursuant to Rules 6 & 7 of the Rules Governing 2255 Proceedings. The brevity of the Government's Response and the Court's consolidation of Kennedy and Vickers' 2255 motions along with the , Court's expeditious Opinion and Order denying their motions **"two days" after they filed a joint reply to the Government's Response, (ECF Nos. 78 cf. 79),**  did not afford Defendants enough time to provide the Court newly discovered facts probative of "factual innocence" and derived from the investigation of this case.

**(a) . FBI Investigation:**

Specifically, **Tower A**, an undisputed FBI  Confidential Human Source  ("CHS"),  **Louay Hussein**, who was the acting manager of **Nationwide Recovery, Inc.,** a family owned business. **see City of Detroit  v. Nationwide Recovery, Inc., Appeal No.348814;  March 18, 2021 ("Mich. App." @  p. 2.).**    In 2011, the Detroit Police Department ("DPD") placed Nationwide on its list of authorized towing companies and issued a towing permit to Nationwide. In May 2016, the DPD renewed Nationwide's towing permit.   **see Nationwide Inc, et al. v. City of Detroit, Case No. 17-cv-12378 ("E.D. Mich 2027") ("ECF No. 179" @ p. 2.).**  On July 19, 2017, DPD Lieutenant Michael A. Parish forwarded to DPD Assistant Chief of Police James E. White an inter-office memo titled "Preliminary Report on the Matter of Nationwide Towing and Its Involvement in the Theft of a White 2017 Jeep Cherokee." (ECF No. 148-5 at Pg. ID 4871.) The memo states in relevant part: For at least the last year, Nationwide has had the reputation of recovering stolen vehicles at an alarming rate. Department entities, including the Commercial Auto Theft Team and the Department's Public Integrity Unit had voiced concerns that Nationwide may have been involved, or at least complicit, in the thefts; however, there was

insufficient evidence to carry the concern and surveillance operations had been unsuccessful . . . . According to these statistics, Nationwide's recoveries far exceeded those of other companies participating in [the DPD's stolen car] initiative, particularly considering Nationwide's limited participation in the program. Officers assigned to the Abandoned Vehicle Task Force had expressed concern over the rate at which Nationwide was finding these vehicles; however, other than conjecture, no one had clear evidence that Nationwide was involved in the thefts. **(ECF No. 179 @ p. 3-4).**   The City subsequently discovered that "at least one Nationwide employee," Kenneth "Turbo" Christian, "was in contact with car thieves at the time Nationwide's permit was terminated." (ECF No. 170 at Pg. ID 5579 (citing Christian Dep., ECF No. 147-3 at Pg. ID 4674-75).   **Id. @ p. 10.**   On July 19, 2017, Assistant Chief White forwarded an inter-office memo to DPD Chief of Police James E. Craig, concurring with Lieutenant Parish's recommendation. (ECF No. 154-2.) Then, Assistant Chief White and Lieutenant Parish signed an "Administrative Message" suspending Nationwide from the towing rotation. (ECF No. 148-2.)

On March 18, 2021, the Michigan Court of Appeals [] affirmed [the state trial court's ruling in favor of the City, stating, in part]: "Although the trial court found that [the City] failed to prove any knowing collusion between Louay and known car thieves, the parties do not contest the trial court's finding that at least one of Nationwide's drivers, Kenneth "Turbo" Christian, "clearly" paid individuals he knew to be car thieves for tips regarding where stolen vehicles could be located. In effect, this offered an extra financial incentive for car thieves to steal vehicles . . . . . [There] was strong circumstantial evidence that [stolen] vehicles were located in one of two improper ways: either by paying car thieves for tips or by trespassing on private property in search of stolen vehicles. It was a reasonable inference that Nationwide's drivers performed warrantless searches with knowledge and encouragement of law enforcement that could not have been performed by the

6

police directly without violating the Fourth Amendment." (Id. at Pg. ID 5726.) (ECF No. 176 at Pg ID 5634-37; ECF No. 177 at Pg. ID 5712.) **Id. @ p. 12.**

It is noteworthy, that before and after Nationwide's July 19, 2017, suspension from the DPD tolling rotations, Nationwide was **NOT** involved with officers from the DPD. Rather, the police agencies in collusion with Nationwide were the Highland Park Police Department ("HPPD"), who permitted officers to be deputized by the Wayne County Sheriff's Office ("WCSO"):

In pertinent part, the Complaint alleged that the [plaintiff] City had uncovered significant evidence showing that Nationwide was involved in . . . vehicle theft. The Detroit Police Department, hereinafter DPD, learned that . . . Nationwide was recovering . . . vehicles at an alarming rate under highly questionable circumstances. Vehicles were recovered before the owners knew of the theft or reported the vehicle stolen. Nationwide was recovering significantly more newer models than other tow companies. Nationwide was recovering vehicles **without the presence of police officers**, contrary to DPD rules. Sergeant James McMahon, hereinafter McMahon, [who is a] Highland Park Police Officer and deputized Wayne County Sheriff, frequently signed off on recoveries by Nationwide without traveling to the scene. McMahon delayed sending required notifications regarding vehicle recovery to the Law Enforcement Information Network System, hereinafter LEIN, resulting in delay and notifying owners of the recovery of the vehicles, and benefiting Nationwide by accruing additional storage fees. Plaintiff's theory of the case at trial was that: (1) Nationwide had "acted in concert" with deputies and officers of the Wayne County Sheriff's Office (WCSO) and the Highland Park Police Department to engage in the disputed towing practices within plaintiff city;. **Appeal No.348814; March 18, 2021 ("Mich. App." @ p. 4) (emphasis added).**

Indeed, after the HPPD and WCSO was enjoined from assisting Nationwide, it had to use car thieves and their own tow truck drivers to find vehicles to impound and to charge car owners exorbitant storage fees for unjust gain.    This was the cause of action that the City of Detroit used to file a nuisance complaint against Nationwide.    **Id. @ p. 2-4.**  These facts undermine the veracity of the Court's reliance on the facts below.

**(b). Kennedy & Vickers Guilty Pleas:**

The Court also stated relevant facts regarding Kennedy and Vickers' guilty pleas:

In August 2016, DPD Lieutenant John Kennedy became a supervisor in command of the Internal Affairs Division. (Presentence Report,    11.) From May 2017 through March 2018, Kennedy supervised the Integrity Unit's investigation of alleged wrongdoings by "Tower A," an individual involved in the towing industry in the City of Detroit. (Id.,    12.) Following an indictment on bribery charges (ECF No. 1), Kennedy, and fellow DPD officer Daniel Vickers,

7

ultimately admitted that they conspired to solicit things of value from Tower A in exchange for information related to the Internal Affairs investigation. (Presentence Report,    16; see also ECF No. 32, PageID.99; ECF No. 35, PageID.122.).

**(Id. @  Pg ID 464-65).**

**(i). Elements of Conspiracy to Accept Bribes:**

`        Next, the Court set forth the Elements of the Conspiracy to Accept Bribes Offense:

Kennedy and Vickers each pled guilty to one count of conspiracy to accept bribes in violation of 18 U.S.C. §§ 371 and 666(a)(1)(B). (ECF Nos. 32, 35.) Section 666(a)(1)(B) makes it a crime for most state and local officials to "corruptly" solicit, accept, or agree to accept "anything of value" "**intending to be influenced or rewarded** in connection with" any official business or transaction worth $5,000 or more.  **(Id. @ Pg. ID 465) (emphasis added).**

**(ii). Defective Factual Basis of Kennedy's & Vickers' Guilty Pleas:**

To satisfy these elements, Kennedy admitted to the following factual basis for his plea:

From in or about **May 2017**, through in or about **September 2021**, [Kennedy and Vickers] did unlawfully and knowingly conspire and agree with each other to **corruptly solicit and demand** cash, cars, car parts, car repair services and other items from an individual involved in the towing industry (**Tower A**) **with the intent to be influenced and rewarded** in connection with a business transaction, or series of transactions of the City of Detroit involving $5,000 or more.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Specifically, in August 2016, Kennedy was made a supervisor in command of the DPD's Internal Affairs Division (IA). In this role, Kennedy oversaw investigations concerning misconduct of city employees and reported his findings to the chief of police. From in or about **May 2017**, through in or about **March 2018**, IA investigated allegations of wrongdoing committed by Tower A.     supervised the investigation and promised to provide Tower A with towing referrals as well as inside information on the city's investigation of Tower A. Vickers, acting as a go-between for Kennedy and Tower A, provided information to Tower A about the status of IA's investigation of Tower A. In exchange, Tower A provided Kennedy and Vickers cash, cars, car repairs, and other items of value.   Between **October 2018**, and **March 2021**, Tower A paid Kennedy three bribes totaling **$14,950**.  Between **February 2018** and **June 2018,** Tower A paid Vickers three bribes totaling **$3,400.  (ECF No. 79 Pg. ID 465-66) (emphasis added) (citing ECF No. 32 @ Pg. ID 99-100).**

8

The Court added that "Vickers' factual basis contained an identical first paragraph[;] [i]t differed only slightly in the last few sentences of the second paragraph:"

Vickers, acting as a go-between in the bribery scheme for Tower A and Kennedy, provided Tower A with proprietary information about IA's investigation. In exchange, Tower A provided Vickers with cash and a car. Between February 2018, and June 2018, Tower A paid Vickers three bribes totaling $3,400. Between October 2018, and March 2021, Tower A paid Kennedy three bribes—the value of which totaled $14,950. (ECF No. 35, PageID.122–123.) **(ECF No. 79 @ Pg. ID 466).**

**(c). Palpable Defect:**

These facts demonstrate that Defendants did not "**corruptly solicit, accept, or agree to accept anything of value " with the  "intent to be influenced or rewarded in connection with the alleged "three  transactions noted by the  Court  above.    Rather, it was Louay, who  again  is  characterized  as  Tower  A,  that  solicited  the  Kennedy  and  Vickers. Defendants  discover materials  to corroborate these  facts.**

There is an auto recording by the FBI **dated September 1, 2017** between Kennedy and Louay, asking  Kennedy  to  talk  with  then  DPD  Assistant  Chief  James  White  to  arrange  a meeting with Louay to discuss being reinstated to the tolling rotation.   **see Discovery File Bates # 1D136.**     This recording evinces that Kennedy was being solicited by Louay for not only information, but to intervene in getting Nationwide reinstated  in the towing rotation.

Similarly, there is a video record planted in a truck driven by Louray dated December 16, 2019, soliciting Vickers to file a false police report on Louay's brother's Range Rover that he crashed while  in  town over the weekend.    Vickers declined indicating that he was not certified to do reports.  **see Discovery File Bates # 2179366.004.cam1.mp4.**

The **intent to be influenced or rewarded** element is the **"sine qua non"** to Kennedy and Vickers actual innocence claim and was apparently not considered by the Court. **see  (ECF No. 78 @  Pg ID 461-62) ("The  Factual Basis conflates the intent element by stating it in the conjunctive … to support the two theories that accepting a bribe or gratuity violates**

9

**Subsec. 666(a)(1)(B).**   The new facts clearly show that the Factual Basis for Defendants' guilty pleas are clearly erroneous or otherwise unreliable.  The new facts evince neither Defendant was  predisposed to accept a bribe or gratuity,    In fact, because Louay was  working as a CHS for the FBI, the agents from the FBI had to know about the lawsuit in federal court and on appeal.  It is a reasonable inference that in their zeal to advance their careers, the FBI agents instigated the criminal acts by allowing Louay to act as Tower A and solicit Defendants to engage  in activities that  in this case was characterized as a  conspiracy to accept bribes.

**(d), Different Outcome:**

This is a clear  case of entrapment or an infringement on Defendants' due  process rights. Given the  manifest  injustice  at  issue,the gateway for factual innocence is open.  Any barriers from waivers are   thereby removed for reasons already argued in Defendants 2255 motion and reply.

**(e). Motion to Supplement 2255 Motion:**

`       Defendants request an opportunity to fully perfect their 2255 motion.   There  is more credible evidence to present to the Court that  would warrant appointing counsel under Rule 6 for Discovery followed by the expanding the record under Rule 7.  If this Court is  inclined to reconsider its denial of Defendants 2255 motion, Rule 15(b)(2) provides the Court discretion to afford  Defendants  an  opportunity  to  conform  their   pleadings  to  the  evidence.    Because Respondent did not argue the merits  in this case, such constitutes a forfeiture to oppose leave to supplement.

## C O N C L U S I O N

**WHEREFORE,** for the reasons above, Defendants pray the Court reconsiders its Opinion and Order of June 5, 2025 denying their 2255 motion, grant leave to supplement their motions with a reasonable time to perfect the same, and grant any other relief the Court finds fair and just.

Date: July 6, 2025

/s/ John Kenndy                                                /s/ Daniel Vickers
Defendant /pro-se                                                Defendant/pro-se

11